UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LEK DOMNI,

      Plaintiff,

   v.

COUNTY OF NASSAU; POLICE OFFICER
CHRISTOPHER LAMONICA; POLICE
OFFICER FREDERICK TRIFARO;
LIEUTENANT ROBERT V. VERLOTTE;
POLICE DETECTIVE JAMES HOWE, JR.;
POLICE DETECTIVE NICOLE C. MOORE;
POLICE SERGEANT MICHAEL CIBULS;
NASSAU COUNTY CORRECTIONAL
OFFICER BRIAN DOLAN; and
NASSAU COUNTY CORRECTIONAL
OFFICERS JOHN DOE Nos. 2-3,

      Defendants.
-------------------------------------------------------X

         **REPORT AND
         RECOMMENDATION**

       19-CV-00083 (JMA) (LGD)

**LEE G. DUNST**, Magistrate Judge:

   *Pro se* plaintiff Lek Domni ("Plaintiff") commenced this action on January 4, 2019.  *See*

Electronic Case File Number ("ECF No.") 1.  Plaintiff is pursuing numerous claims against

defendants County of Nassau ("County"); Police Officer Christopher Lamonica ("Lamonica"); Police

Officer Frederick Tifaro ("Tifaro"); Lieutenant Robert V. Verlotte ("Verlotte"); Police Detective

James Howe, Jr. ("Howe"); Police Detective Nicole C. Moore ("Moore"); Police Sergeant Michael

Cibuls ("Cibuls", and together with Lamonica, Trifaro, Verlotte, Howe, and Moore, "Officer

Defendants"); Nassau County Correctional Officer Brian Dolan ("Dolan"); and Nassau County

Correctional Officers John Doe Nos. 2-3 (together with the County, Officer Defendants, and Dolan,

"Defendants") alleging various state and federal constitutional violations arising from his October

2017 arrest and his subsequent prosecution in early 2018.  *See generally*, Second Amended

Complaint, ECF No. 178 ("SAC").

Now, several years later, Plaintiff seeks leave to file a *third* amended complaint adding two additional claims for alleged violations of 42 U.S.C. § 1983: (1) a proposed Count VIII against Dolan for First Amendment retaliation, which alleges Dolan placed a dead rat in Plaintiff's driveway on or about April 29, 2022 as retaliation for Plaintiff filing the SAC, and (2) a proposed Count XI against the County for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), which alleges the Nassau County District Attorney's Office ("NCDAO") maliciously prosecuted Plaintiff without cause in order to protect Defendants.  *See* Plaintiff's Motion For Leave To File A Third Amended Complaint ("Motion"), ECF No. 211.  For the reasons set forth herein, the undersigned respectfully recommends that the Court deny Plaintiff's Motion with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 15.

I.    **BACKGROUND**

A.    **Relevant Alleged Facts.**

The alleged facts set forth herein are taken from Plaintiff's proposed Third Amended Complaint, attached to the Motion at ECF No. 211 as Exhibit B ("PTAC").

1.    The Incident And Resulting Arrest

On October 30, 2017, Plaintiff went to the Massapequa Dog Park located in Nassau County, New York.  *See* PTAC ¶¶ 23-24.  Plaintiff brought his dog into the "large dog" section of the park and asked the people in the "small dog" section to "be mindful" of their barking dogs.  *See id*. ¶¶ 25-26. An argument ensued between Plaintiff and those in the "small dog" section of the park, which led one of the latter to call the police.  *See id*. ¶¶ 27-29.

Officers Lamonica and Tifaro then arrived at the scene.  *See id*. ¶¶ 31-32.  The officers directed the "large dog owners," including Plaintiff, to exit the dog park.  *Id*. ¶ 34.  Plaintiff left the dog park to speak with the officers and then sought to re-enter the park to retrieve his dog.  *See id*. ¶ 35.  But Lamonica "physically blocked" Plaintiff from re-entering the dog park.  *Id*.  Plaintiff

again attempted to re-enter the dog park to retrieve his dog, while walking with his hands by his sides, but Lamonica stepped in Plaintiff's walking path.  *See id*. ¶ 36.  Lamonica accused Plaintiff of bumping into him, which, according to Plaintiff, reflects Lamonica's goal of "manufacturing 'probable cause' to arrest Plaintiff."  *Id*.  Lamonica then grabbed Plaintiff by the arm and neck and shoved him against a police vehicle.  *See id*. ¶ 37.  As Plaintiff "resisted" being arrested by Lamonica, Trifaro pushed Lamonica from behind, which caused Lamonica to fall onto Plaintiff.  *Id*. ¶ 38.  Plaintiff continued to "resist" arrest for a period of time before capitulating—at which point Lamonica twisted Plaintiff's arm to apply handcuffs and reportedly closed them "extra tight for the purpose of causing . . . further pain and suffering."  *Id*.  Thereafter, Lamonica claimed that Plaintiff not only bumped into him but also "punched him in the face with his fist."  *Id*. ¶ 39.  According to Plaintiff, that allegation was "false, manufactured, and untrue and was made . . . solely as a pretext to arrest Plaintiff and cover up their own illegal conduct." *Id*.  Plaintiff then was placed in a police car and Plaintiff advised Lamonica that he "was making a big mistake by making this arrest, that Plaintiff was previously a civil rights attorney, that he would not let this go, and that [Lamonica] would certainly subject himself to disciplinary action if he pursued this false arrest."  *Id*. ¶ 40.  Shortly thereafter, Sergeant Cibuls arrived at the scene, observed a cell phone video that Plaintiff's friend, Gautam Khanna, took of Plaintiff's arrest, and then instructed Lamonica to release Plaintiff.  *See id*. ¶¶ 30, 41.  However, Lamonica refused, in what Plaintiff alleges "was a direct act of insubordination of his superior and highest ranking officer on the scene."  *Id*. ¶ 41.

### 2.    The Interrogation, Criminal Complaint, And Arraignment

Plaintiff then was transported to a nearby police precinct, where he was questioned by Detectives Howe and Moore.  *See id.* ¶¶ 43-44.  The detectives allegedly prepared a written statement that falsely attributed inculpatory statements to Plaintiff and omitted exculpatory information that "together with the exculpatory KHANNA cell phone video, negated any probable cause" for

Plaintiff's arrest.  *Id*. ¶ 45.  Trifaro and Lamonica allegedly drafted a false criminal complaint against Plaintiff that sought to charge him with the felony of assault in the second degree, resisting arrest, and obstruction of a government investigation.  *See id.* ¶¶ 47, 49.  Plaintiff further alleges that (1) Lieutenant Verlotte "authorized, supervised, and approved of" the complaint while knowing or being negligent to its falsity, and (2) Trifao, Lamonica, Howe, and Moore "conspired" to "falsely charge" Plaintiff through the complaint.  *Id*. ¶¶ 47, 50.  Plaintiff was detained in a holding cell for arraignment overnight and, on the following day, October 31, 2017, he received bail of $7,500.  *See id*. ¶ 52.  After arraignment, Dolan and the two John Doe corrections officers allegedly mocked Plaintiff while conducting a cavity search.  *See id*. ¶¶ 53-54.  Plaintiff then was transferred to the Nassau County Correctional Facility and held there until he was released on bail that evening.  *See id*. ¶ 55.  Plaintiff alleges that Lamonica, Trifaro, Cibuls, Verlotte, Howe, and Moore "conspired to withhold the Khanna cell phone video of the assault and false arrest" of Plaintiff from the NCDAO and, after the NCDAO had the cell phone video, then "conspired with [NCDAO] prosecutors" to pursue an indictment against Plaintiff despite the exculpatory cellphone video.  *Id*. ¶¶ 57-59.

### 3. The Grand Jury Proceedings & Resulting Media Coverage

On approximately February 26, 2018, a grand jury proceeding was instituted against Plaintiff in the New York State Supreme Court, Nassau County.  *See id*. ¶ 60.  Plaintiff, Lamonica, Trifaro, and unspecified "civilian witnesses" testified to the grand jury.  *Id.*  On March 1, 2018, the grand jury returned a "No True Bill" and all charges against Plaintiff were dismissed.  *Id*. ¶ 61.

On March 15, 2018, *Newsday* published an online article that quoted a Nassau County Police Department spokesperson as saying the department was "disappointed" in the result of the grand jury proceedings.  *Id*. ¶ 62.[1]  The next day, *News12LongIsland.com* published an article attributing a

---

[1] *See* Newsday Staff, *Charges In Fight At Dog Park Dropped, Authorities Say*, NEWSDAY (Mar. 15, 2018), https://www.newsday.com/long-island/nassau/dog-park-charges-dropped-oyster-bay-d68816.

similar, but more detailed, statement to a Nassau County Police Department spokesperson:

> In a statement, the Nassau County Police Department in part said: "A Nassau County police officer, while attempting to keep the peace and resolve a disturbance, was assaulted and sustained injuries that necessitated medical care. We are disappointed with the grand jury's decision, however, this will not deter us from protecting life and property."

*Id*. ¶ 63.[2]  Plaintiff alleges the County made these statements "with malice and/or reckless disregard for the truth" because the charges against Plaintiff were dropped.  *Id*. ¶ 65.

### 4.    The Internal Affairs Bureau Review

In March 2018, after the grand jury dismissed the charges against him, Plaintiff filed a complaint with the County Police Department's Internal Affairs Bureau ("IAB") accusing the Officer Defendants of violating rules and regulations in connection with Plaintiff's arrest.  *See id*. ¶ 66.  The IAB directed Plaintiff's complaint to Lieutenant Joseph Kotak ("Kotak"), who was reportedly "a coworker" of the Officer Defendants because they all worked in the same precinct.  *Id*. ¶¶ 67-69.  Kotak interviewed Plaintiff during a phone call in or shortly after April 2018.  During that call, Kotak allegedly (1) "admitted that he was a coworker of the [Officer] Defendants," (2) acknowledged that "some" people have found it "unfair and biased" for an IAB complaint to be directed to the precinct where the complaint originated, (3) declined Plaintiff's request for an in-person interview to discuss the video of his arrest, and (4) abruptly terminated the call.  *See id.* ¶¶ 69-73.  On or about June 12, 2018, Kotak called Plaintiff's then-attorney and stated that the IAB concluded its investigation and "[e]xonerated" the Officer Defendants.  *Id.* ¶ 74.  Plaintiff received no written confirmation of that conclusion or any underlying investigative report.  *Id.*

---

[2] The article is no longer available on the *News12Long Island* website but is available on its sister site for the Bronx.  *See* News 12 Staff, *Charges Dropped Against Man Accused Of Punching Nassau Police Officer*, NEWS 12 THE BRONX (Mar. 16, 2018), https://bronx.news12.com/charges-dropped-against-man-accused-of-punching-nassau-police-officer-37745947.

Several months later, Plaintiff recalled for the first time that he had attended middle and high school with Kotak many years earlier and concluded Kotak "may have had animosity towards Plaintiff" due to their prior acquaintance. *Id*. ¶ 75. Plaintiff alleges Kotak knew at the time he interviewed Plaintiff about their shared "personal history," which allegedly "undermines the credibility of the investigation." *Id*.

     5.    <u>Plaintiff's Communications With The NCDAO In June And July 2019</u>

On June 30, 2019, Plaintiff attended a meeting of the North Oyster Bay Democratic Club where then-County District Attorney Madeline Singas spoke. *Id*. ¶ 77. After the meeting, Plaintiff informed Ms. Singas that this current lawsuit (which had been filed on January 4, 2019) alleges the NCDAO prosecuted Plaintiff despite knowing the criminal complaint against him was false. *See id*. ¶ 79. Ms. Singas reportedly told Plaintiff that someone from the NCDAO could review the matter if Plaintiff first wrote a letter setting forth Plaintiff's allegations. *See id*. On July 1, 2019, Plaintiff mailed a six-page letter to Ms. Singas providing those details. *See id*. ¶ 80. On July 18, 2019, the NCDAO's Executive Assistant District Attorney and Chief of Conviction Integrity Unit mailed a response to Plaintiff that said "there was a reasonable review of the evidence to have concluded that you were Obstructing an Official Government Investigation." *Id*. ¶ 81 (emphasis removed). According to Plaintiff, that letter "failed to address Plaintiff's complaints regarding the false and fraudulent Felony Assault and Resisting Arrest charges." *Id*.

     6.    <u>Discovery Of A Dead Rat In Plaintiff's Driveway In April 2022</u>

At approximately 1:06 a.m. on April 29, 2022, Plaintiff left his residence with his dog to go for a walk. *Id*. ¶ 86. At that time, Plaintiff's dog pulled Plaintiff to the front of his car, which was parked in Plaintiff's driveway, and "began intently sniffing under the engine." *Id*. ¶ 87. Plaintiff then discovered a "dead rat" under his car, "took video and photo evidence of the dead rodent," and disposed of it. *Id*. Plaintiff "believes" that Dolan "perpetrated" placing the dead rat, or "conspired

with others" to arrange for placing the dead rat, in Plaintiff's driveway because (1) three days earlier, Dolan was served a copy of the SAC, which substituted Dolan into this action for previously pled Correctional Officer John Doe No. 1; (2) Dolan reportedly lives approximately two miles away from Plaintiff; and (3) Dolan showed "animosity and malice" towards Plaintiff when he mockingly conducted the cavity search on Plaintiff over four years earlier. *Id.* ¶ 88, 91; *see also id.* ¶¶ 53-54, 82-85.  Plaintiff describes this alleged rat incident as Dolan's "retaliatory act" against Plaintiff for this lawsuit.[3]  *Id.* ¶ 91.

> **B.**    **Relevant Procedural History**

> **1.**    The Original Complaint

On January 4, 2019, Plaintiff commenced this action against the County, the Officer Defendants and three John Doe defendants alleging eleven federal and state causes of action for false arrest, false imprisonment, malicious prosecution, failure to intercede, civil conspiracy, Fourteenth Amendment Due Process violations, and *Monell* liability.  *See generally* ECF No. 1.  On January 12, 2019, the County and Officer Defendants answered the complaint.  *See* ECF No. 12.

> **2.**    The Amended Complaint

On October 25, 2019, Plaintiff filed an amended complaint, *see* ECF No. 39, "without any indication in the record that he was granted permission by the Court—or obtained consent from Defendants—to do so."  *Domni v. Cnty. of Nassau*, No. 19-CV-83, 2020 WL 7625417, at *2 (E.D.N.Y. Dec. 21, 2020) (citing ECF No. 39).  That proposed amended complaint (1) sought to add Cibuls, Nassau County Correctional Officers John Does Nos. 1-3, and Nassau County Police Department Spokesperson Jane/John Doe as defendants in this action, (2) sought to add excessive force and assault and battery claims against Lamonica and Trifaro, (3) sought to add a defamation

---

[3] Plaintiff did not report the dead rat to the police because "he did not believe that his complaint of criminal conduct concerning the dead rat underneath his vehicle parked on the premises of his residence would be taken seriously and thoroughly and vigorously investigated."  PTAC ¶ 89.

claim against Defendant Police Spokesperson Jane/John Doe, (4) included the full names of Howe and

Moore, (5) removed Plaintiff's prior state and federal claims for false imprisonment, and (6) re-

characterized the failure to intercede claims as claims for failure to supervise and intervene. *See id.*

On October 29, 2019, Plaintiff filed a motion to allow him to file the amended complaint, which the

Court denied without prejudice due to Plaintiff's failure to meet and confer with Defense Counsel.

*See id.* (citing November 1, 2019 Electronic Order).  On December 21, 2020, after the parties had

briefed amendment, the Court denied in part and granted in part Plaintiff's motion to amend by

precluding the defamation claim and the addition of Police Spokesperson Jane/John Doe as a

defendant—and otherwise granting the motion to amend. *See id.* at *6.  On January 25, 2021,

Plaintiff filed an amended complaint consistent with the court's December 21, 2020 Order.[4]  *See* ECF

No. 113.  On February 5, 2021, Defendants (except Dolan, who was not yet a party to this action)

answered the amended complaint.  *See* ECF No. 118.  The January 25, 2021 amended complaint does

not include factual allegations regarding Plaintiff's June and July 2019 communications with the

NCDAO.

### 3.    The Second Amended Complaint

On January 29, 2021, just four days after filing the amended complaint, Plaintiff filed a letter

motion seeking leave to file a second amended complaint to substitute Dolan for defendant

Correctional Officer John Doe #1 and "add[] a federal civil rights claim under the Fourth

Amendment" for Dolan's "unconstitutional body cavity search that was mistakenly omitted from the

Amended Complaint."  ECF No. 115.  On February 4, 2021, Defendants opposed Plaintiff's letter

motion to file the second amended complaint.  *See* ECF No. 117.  On January 19, 2022, the Court

ordered the parties to further brief Plaintiff's amendment request.  *See* ECF No. 152.  On April 7,

---

[4] The Amended Complaint filed on January 25, 2021 with leave of Court is erroneously designated "Amended Complaint *Second*" on the docket, though the document itself is correctly labeled "Amended Complaint."  ECF No. 113.

2022, the Court granted Plaintiff's motion to file a second amended complaint substituting Dolan for defendant Correctional Officer John Doe No. 1 and adding a Fourth Amendment unlawful search cause of action against Dolan and defendants Correctional Officer John Doe Nos. 2-3.  *See Domni v. Cnty. of Nassau*, No. 19-CV-83, 2022 WL 16548627, at *6 (E.D.N.Y. Apr. 7, 2022).  On April 12, 2022, Plaintiff filed the SAC consistent with the Court's April 7, 2022 Order.  *See* ECF No. 178.  On April 29, 2022, Defendants answered the SAC.  *See* ECF No. 186.  The April 12, 2022 SAC does not include factual allegations regarding Plaintiff's June and July 2019 communications with the NCDAO.

### 4.   The Motion To File The Third Amended Complaint

On July 25, 2022, Plaintiff filed the Motion.  *See* ECF No. 211.  As stated above, the PTAC attached to the Motion seeks to add two categories of claims (1) a proposed Count VIII against Dolan for First Amendment retaliation, based on Dolan allegedly placing a dead rat in Plaintiff's driveway on or about April 29, 2022 as retaliation for Plaintiff filing the SAC ("Rat Amendments"),[5] and (2) a proposed *Monell* claim in Count XI against the County based on the NCDAO allegedly initiating the grand jury proceedings against Plaintiff without probable cause, which also newly alleges Plaintiff's June and July 2019 communications with the NCDAO ("NCDAO Amendments").  *See* PTAC ¶¶ 77-81, 125-29 (Rat Amendments); *id*. ¶¶ 82-91, 144-51 (NCDAO Amendments).[6]  On July 27, 2022, the undersigned directed Defendants to respond to the Motion by August 24, 2022.  *See* ECF No. 212. On August 3, 2022, Defendants requested leave to file a six-page opposition to the Motion (beyond

---

[5] For ease of reference, this Report and Recommendation uses the defined term "Rat Amendments" but, as explained below, Plaintiff seeks to supplement rather than amend the SAC with these new allegations.

[6] *See also* ECF No. 211 at 1 ("The PTAC amends the [SAC] in two specific areas. First, it pleads new facts supportive of a new claim against Defendant Correctional Officer Brian Dolan for 1st Amendment Retaliation.  Second, the PTAC seeks to add new facts and a new claim/theory of liability under *Monell* against the County of Nassau . . . based on the actions, investigations and/or inactions of the Nassau County District Attorney's Office.").

the five-page limit imposed by the undersigned's Individual Practice Rule VI.A.3).  *See* ECF No. 216.

On August 4, 2022, the Court granted Defendants' request and Defendants filed their six-page

opposition to the Motion.  *See* August 4, 2022 Order; ECF No. 217 ("Opp.").

## II.    LEGAL STANDARDS

### A.    Supplementing The SAC

The Rat Amendments are subject to Rule 15(d) because they are based on "facts that arose

after the [April 12, 2022] SAC was filed."  *Beckett v. Inc. Vill. of Freeport*, No. CV 11-2163, 2014

WL 1330557, at *7 (E.D.N.Y. Mar. 31, 2014).  Rule 15(d) provides, in relevant part, that "[o]n

motion and reasonable notice, the court may . . . permit a party to serve a supplemental pleading

setting out any transaction, occurrence, or event that happened after the date of the pleading to be

supplemented."  Fed. R. Civ. P. 15(d).  "Rule 15(d) motions are evaluated by the Court under the

same standards used to evaluate motions to amend pleadings under paragraph (a) of the same rule."

*Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 59 (S.D.N.Y. 2021).  That

standard is discussed below.

### B.    Amending The SAC

The parties dispute which standard governs amending the SAC to include the NCDAO

Amendments.  Plaintiff argues that Rule 15(a)(2) applies.  *See* ECF No. 211 at 2.  That Rule states, in

relevant part, that a party may amend its pleading with leave of the Court and that the Court "should

freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2)*.  Defendants argue that "the

'good cause standard' of [Rule] 16(b) applies, rather than the liberal amendment standard of Rule

15(a)" because the Court's November 22, 2019 Scheduling Order set January 31, 2020 as the deadline

to amend the pleadings.  Opp. at 2 (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340

(2d Cir. 2000)).  While the November 22, 2019 Scheduling Order imposes January 31, 2020 as the

"[d]eadline" for amending the pleadings, it does not specify that later-filed motions to amend will be

denied absent a showing of good cause. *See* November 22, 2019 Scheduling Order (adopting the schedule proposed in ECF No. 43); ECF No. 43 (proposing January 31, 2020 as the "Deadline for Joinder of Additional Parties and Amendment of pleadings"). Given that circumstance, the NCDAO Amendments are subject to analysis under Rule 15(a)(2), which governs amendments after the period to amend as of right has expired but before the date set in an order after which amendments will be denied absent a showing of good cause. *See Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (finding the district court improperly applied Rule 16 because "[t]he language of the scheduling order in this case set the deadline (ten days) for amending without leave of court" but "set no expiration date after which all amendments were prohibited, which would have triggered the stricter Rule 16(b)(4) 'good cause' standard thereafter"); *Aboah v. Fairfield Healthcare Servs., Inc.*, No. 20-CV-00763, 2022 WL 443253, at \*3 (D. Conn. Feb. 14, 2022) (finding Rule 16 inapplicable because "the Scheduling Order . . . did not set a date after which no amendment would be permitted").

When applying Rule 15(a)(2), "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). Leave to amend also may be denied based on the futility of the proposed amendment. *See, e.g., Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019); *Berlin v. JetBlue Airways Corp.*, 436 F. Supp. 3d 550, 571 (E.D.N.Y. 2019). "The opposing party likewise bears the burden of establishing that an amendment would be futile." *Seemann v. Coastal Env't Grp., Inc.*, 219 F. Supp. 3d 362, 366 (E.D.N.Y. 2016). Absent one of these showings, "the leave sought should, as the rules require, be freely given." *Chan v. City of New York*, No. 19-CV-7239, 2021 WL 6502292, at \*3 (E.D.N.Y. Dec. 29, 2021) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

An amendment is futile if it "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020) (internal quotations omitted). Under Rule 12(b)(6), a court determines whether a pleading contains "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To that end, the Court accepts as true the well-pled factual allegations set forth in the PTAC and draws all reasonable inferences in Plaintiff's favor.  *See Green v. Dep't of Educ. of N.Y.*, 16 F.4th 1070, 1076 (2d Cir. 2021).  But the Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements.  *See In re Facebook, Inc., IPO Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015).  To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 664.  The PTAC must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.  Determining whether the NCDAO Amendments and the Rat Amendments propounded in the PTAC state a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 664.   At bottom, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim . . . ." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010).

The undersigned may issue a report and recommendation on a dispositive issue where, as here, the parties have not consented to the magistrate judge's jurisdiction.  *See* 28 U.S.C § 636(b)(1).  While granting a motion to amend is considered non-dipositive, denying same is considered dispositive.  *See Singh v. Lintech Elec., Inc.*, No. 18-CV-5780, 2022 WL 1422311, at *4 (E.D.N.Y. Mar. 3, 2022), *report and recommendation adopted*, 2022 WL 2158748 (E.D.N.Y. June 15, 2022).  Accordingly, this Report and Recommendation complies with Section 636(b)(1).

### C.    Plaintiff's Pro Se Status

Plaintiff contends that his *pro se* status warrants "liberal application of Rule 15(a) . . . ." ECF No. 211 (internal quotations and alterations omitted).  Typically, a *pro se* litigant is afforded a "degree of solicitude" because he "generally lacks both legal training and experience and, accordingly, is

likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). That is not these case here.

Plaintiff reportedly "practiced civil rights litigation" in federal court "for 25 years . . . ." Plaintiff's Discovery Status Report, ECF No. 239 at 2 (citing copy of Plaintiff's resume attached thereto as Exhibit M); *see* PTAC ¶ 40 ("Plaintiff told LAMONICA that he was making a big mistake by making this arrest, that Plaintiff was previously a civil rights attorney, [and] that he would not let this go . . . ."); *Domni*, 2020 WL 7625417, at *3 n.4 (noting Plaintiff "on several occasions[] advised that he was once a practicing attorney and requested differential treatment on that basis"). "[A] lawyer representing himself ordinarily receives no such solicitude at all." *Tracy*, 623 F.3d at 101; *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys . . . typically cannot claim the special consideration which the courts customarily grant to *pro se* parties." (internal quotations omitted)). Accordingly, the undersigned will not grant any such leniency to Plaintiff. *See Bank v. Alarm.com Holdings, Inc.*, 828 F. App'x 5, 7 (2d Cir. 2020) (declining to extend "any special solicitude" to *pro se* attorney plaintiff); *see Knopf v. Esposito*, 803 F. App'x 448, 454 n.1 (2d Cir. 2020) (declining to extend "special solicitude" to *pro se* attorney defendants).

## III.    ANALYSIS

### A.    The NCDAO Amendments Are Futile

Defendants argue the NCDAO Amendments result from undue delay and would impose prejudice.[7] The Court need not address those arguments given that, as explained below, it finds

---

[7] Defendants assert the NCDAO Amendments reflect undue delay because "Plaintiff has proffered no explanation or reason for the four-year delay in seeking the amendment" and Plaintiff could have pled the NCDAO Amendments in his two prior pleadings: the January 25, 2021 amended complaint and the April 12, 2022 SAC. Opp. at 4. Defendants assert the NCDAO Amendments would impose prejudice because—given the NCDAO's administrative changes in the years since the 2018 grand jury proceedings and Plaintiff's related correspondence with the NCDAO in 2019—the difficulty of obtaining discovery would "require the County to expend significant additional resources" and "significantly delay the resolution of the dispute." *Id.* (explaining that "those who were policymakers are no longer policymakers and any records they may have had regarding their specific administration's policies likely were taken with the change of the administration").

amendment is "futile because [Plaintiff] simply cannot sue the [County] in federal court for the federal claims" in the NCDAO Amendments. *Peterec-Tolino v. New York*, 364 F. App'x 708, 711 (2d Cir. 2010) (affirming *sua sponte* dismissal of claim in *pro se* complaint); *see Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (affirming district court's denial of motion to amend based on its *sua sponte* finding that the amendment would be futile; confirming that "amendment of the complaint was certain to be unproductive").

The NCDAO Amendments seeks to assert a *Monell* claim against the County based on the NCDAO allegedly initiating the grand jury proceedings against Plaintiff without probable cause. *See* PTAC ¶ 59 (alleging the NCDAO "convene[d] a Grand Jury against PLAINTIFF even though . . . the NCDAO knew that the KHANNA cell phone video . . . exonerated PLAINTIF"); *Id*. ¶ 149 ("The initiation and continuation of criminal proceedings against PLAINTIFF was done without authority of the law and without any legal basis or probable cause . . . ."). "To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Frost v. New York City Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020) (internal quotations omitted). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Id*. (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).

But Plaintiff's effort to bring this claim against the County is misplaced. In New York State, when deciding whether to prosecute, "a District Attorney is not an officer or employee of the municipality but is instead a quasi-judicial officer acting for the state in criminal matters."[8] *Ying Jing*

---

[8] The Second Circuit reached that conclusion more than thirty years ago in *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988). First, "'[e]very indictment 'constitutes an accusation on behalf of the state as plaintiff and must be entitled "the people of the state of New York" against a designated person, known as the defendant.'" *Id*. at 77 (quoting N.Y. CRIM. PROC. LAW § 1.20(1)). Second, "the Governor may require the State Attorney General to take over the prosecution of any local criminal actions or proceedings . . . ." *Id*. at 76; *see* N.Y.

*Gan v. City of New York*, 996 F.2d 522, 535–36 (2d Cir. 1993) (confirming a *Monell* claim regarding district attorney conduct must "center[] not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office"); *see Bellamy v. City of New York*, 914 F.3d 727, 759 (2d Cir. 2019) (recognizing that *Monell* claims cannot be based on "the decision of whether, and on what charges, to prosecute" (internal quotations omitted)).   Under these principles, courts routinely dismiss *Monell* claims alleging a prosecution lacked probable cause.  *See Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022) ("To the extent the plaintiffs' claim centers on Spota's decision to prosecute the case . . ., the claim fails because, in making that decision, Spota was clearly acting for New York State in a criminal matter, not for the County."); *Baez*, 853 F.2d at 77 (dismissing *Monell* claim based on an assistant district attorney's attempt to prosecute without the requisite grand jury indictment because the decision to prosecute is an act on behalf of the state); *Willis v. Rochester Police Dep't*, No. 15-CV-6284, 2018 WL 4637378, at *10 (W.D.N.Y. Sept. 27, 2018) (dismissing *Monell* claim asserting prior prosecutions lacked probable cause because that allegation "relates to D.A. Doorley in her actions on behalf of New York State—not the County").

While the PTAC alleges that the NCDAO maintained the grand jury proceeding against Plaintiff because it operated under a policy and custom of failing to properly train and supervise prosecutors on professional conduct rules and prosecutorial ethics, *see* PTAC ¶ 145, "[r]epackaging this liability as a failure-to-train (or similar) theory does not remedy the disconnect between the

---

EXEC. LAW § 63(2) (specifying that in such circumstances the Attorney General or her deputy will exercise the powers the district attorney "would otherwise" hold, and the district attorney is limited to "exercise[ing] such powers . . . as are required of him by the attorney-general or the deputy attorney-general so attending"). Third, only the governor can remove a district attorney and appoint one to fill a vacancy. *See Baez*, 853 F.2d at 77 (recognizing these powers); N.Y. Const. art. XIII, § 13(a), (b) (granting governor power to remove a district attorney); N.Y. COUNTY LAW § 400(7) (granting governor power to fill district attorney vacancy). Finally, *Baez* sets forth additional reasons why a district attorney acts on behalf of the state when deciding whether to prosecute. *See* 853 F.2d at 77 (explaining that "[n]o county policy" can dictate "when and in what manner to prosecute a suspected offender," that state law sets district attorney compensation, and that "[a] county has no right to establish a policy concerning how either [the district attorney or attorney general] should prosecute violations of State penal laws").

County and [the NCDAO]'s prosecutorial actions." *Willis*, 2018 WL 4637378, at \*11.  Stated

differently, Plaintiff "cannot circumvent the limitation on municipal liability for a district attorney's

underlying decision whether to prosecute by []styling the [NCDAO Amendments] as a failure to

train." [9] *Hewitt v. City of New York*, No. 09-CV-0214, 2011 WL 441689, at \*3 (E.D.N.Y. Feb. 7,

2011); *see Eisenberg v. Dist. Atty. of Cnty. of King*, No. 93-CV-1647, 1996 WL 406542, at \*7

(E.D.N.Y. July 16, 1996) (dismissing *Monell* claim alleging prosecution without probable cause

resulted from improper training because "claims of inadequate training bear no relationship at all" to

"the decision of the District Attorney to prosecute . . . .").  For these reasons, the NCDAO

Amendments are futile.

### B.    The Rat Amendments Are Futile

Defendants argue that the Rat Amendments are futile because they fail to allege a plausible

First Amendment retaliation claim sufficient to withstand a motion to dismiss.  *See* Opp. at 4-5.  This

Court agrees.  "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right

protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused

by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. Cty.

of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  The Rat Amendments fail to plead facts sufficient to

support that second element, which renders this claim futile.

---

[9] Even if the Court were to construe the NCDAO Amendments as not implicating the determination to prosecute, Plaintiff's "allegations of a municipal custom or policy are entirely conclusory. The plaintiff alleges no facts that support the existence of a custom or policy of violating individuals' rights, except for facts pled in connection with the alleged violation of his own right." *Martin v. Cnty. of Nassau*, 692 F. Supp. 2d 282, 296 (E.D.N.Y. 2010) (dismissing *Monell* claim alleging prosecutorial misconduct).  Indeed, the PTAC "never mentions specific instances of prosecutorial misconduct beyond [Plaintiff]'s own case. Rather, the complaint merely insists—over and over again, in a conclusory fashion—that a pattern or custom of misconduct existed." *D'Alessandro v. City of New York*, 713 F. App'x 1, 10 (2d Cir. 2017) (affirming dismissal of *Monell* claim); *see Malik. v. City of New York*, No. 18-CV-1956, 2020 WL 2747979, at \*3 (E.D.N.Y. May 27, 2020) (dismissing *Monell* claim because "a single act by an ADA cannot be deemed City policy"), *aff'd*, 841 F. App'x 281 (2d Cir. 2021); *O'Neal v. City of New York*, 196 F. Supp. 3d 421, 434 (S.D.N.Y. 2016) ("O'Neal's *Monell* claim against the City also fails because O'Neal has not alleged facts showing that a City policy or custom, more than a single ADA's alleged failure to disclose C.H.'s statement, caused the alleged constitutional injury."), *aff'd sub nom. O'Neal v. Morales*, 679 F. App'x 16 (2d Cir. 2017).

The Rat Amendments fail to adequately plead that the dead rat was intentionally placed in Plaintiff's driveway (instead of it having died there on its own without any human intervention) or that Dolan in particular was involved therewith. *See* PTAC ¶¶ 86-88, 91.  With respect to the placement of the dead rat, the PTAC "is devoid of any factual basis from which to infer [Dolan]'s personal involvement with the alleged violation.  All of the allegations against him are purely conclusory." *Alexander v. Cuomo*, No. 17-CV-309, 2018 WL 2041576, at *7 (N.D.N.Y. Feb. 26, 2018) (dismissing First Amendment retaliation claim).  Accordingly, the conclusory and speculative allegations concerning the dead rat fail to bring the Rat Amendments "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Abascal v. Jarkos,* 357 F. App'x 388, 391 (2d Cir. 2009) (affirming dismissal of First Amendment retaliation claim where plaintiff failed to adequately plead defendant's involvement in adverse activity); *Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist.*, No. 13-CV-4340, 2015 WL 1379702, at *15 (S.D.N.Y. Mar. 25, 2015) (rejecting plaintiff's "naked assertions of retaliation" that "fail to establish that [defendants] were personally involved in any of the complained-of activity"), *aff'd*, 637 F. App'x 16 (2d Cir. 2016).

## IV.     CONCLUSION

For the reasons set forth above, the Court recommends consistent with 28 U.S.C Section 636(b)(1) that the Motion be denied with prejudice.

Further, the Court orders that Plaintiff will be required to show good cause under Rule 16(b)(4) before the Court will grant any future motions to amend the SAC.  *See Sacerdote*, 9 F.4th at 116 (providing a court may require a showing of good cause for future motions to amend pleadings).

## V.      OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any

requests for an extension of time for filing objections must be directed to District Judge Joan M. Azrack.  FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS.  *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED:**

Dated:  Central Islip, New York
        November 16, 2022

s/ Lee G. Dunst
_____
**LEE G. DUNST**
United States Magistrate Judge

18